**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

---

| | |
|---|---|
| In re:   Erin R. Read | BK No: 14-11622 |
|         Debtor | Chapter 7 |

---

| | |
|---|---|
| Girard B. Ruddick, II | |
|         Plaintiff | |
| | |
| v. | A.P. No. 14-01027 |
| | |
| Erin R. Read | |
|         Defendant | |

---

### DECISION AND ORDER ABSTAINING FROM
### AND DISMISSING ADVERSARY PROCEEDING

**I.    Introduction**

Before the Court is the Motion for Summary Judgment of Plaintiff Girard B. Ruddick, II ("Mr. Ruddick) and the objection of Defendant Debtor Erin R. Read ("Ms. Read"). *See* Doc. #23 ("Motion"), #30 ("Objection"), #40 ("Plaintiff's Supplemental Memo"), and #47 ("Defendant's Supplemental Memo"). Mr. Ruddick seeks to prevent Ms. Read, his former spouse, from discharging a debt he asserts she owes him, relying on the discharge exception under Bankruptcy Code § 523(a)(15) as a debt incurred in connection with their divorce.[1] Mr. Ruddick and Ms. Read divorced on November 18, 2013, having executed a property settlement agreement ("PSA") that was incorporated, but not merged, into the divorce decree. Ms. Read filed her chapter 7 bankruptcy petition on July 15, 2014, and on Schedule F listed a debt in the amount of $109,648.26 owed to Susan Ruddick ("SHR Loan"). The SHR Loan also was described in section 8 of the PSA, in which the parties agreed to share equally in that obligation.

---

[1] Unless otherwise indicated, the terms "Bankruptcy Code," "Code," "Chapter," "Section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

While I find that, absent any valid defense, Ms. Read's obligation to Mr. Ruddick arising under the PSA relating to the SHR Loan would otherwise be a nondischargeable debt within the parameters of the § 523(a)(15) discharge exception, I will abstain from adjudicating this adversary proceeding and dismiss it pursuant to 28 U.S.C. § 1334(c)(1). Abstention is warranted and is the proper course of action because the various defenses asserted by Ms. Read in opposition to the Motion, which challenge the validity of the PSA as it relates to the SHR Loan obligation, raise issues more suitable for adjudication in the Rhode Island state courts, in the first instance the Rhode Island Family Court ("Family Court").

## II.     Jurisdiction

The Court has jurisdiction over this matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and DRI LR Gen 109(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(I). Notably, this Court's jurisdiction is concurrent with that of the state courts, in particular the Family Court from which Mr. Ruddick's claim arises.

## III.    Positions of the Parties

### A.    Mr. Ruddick

Mr. Ruddick filed his Amended Complaint Objecting to Dischargeability of Debt Pursuant to 11 U.S.C. § 523 ("Amended Complaint") (Doc. #36) seeking determinations that (1) he is the intended beneficiary of Ms. Read's SHR Loan obligation, which obligation is fully enforceable by the Family Court under the PSA and qualifies as a debt excepted from discharge under § 523(a)(15); (2) Ms. Read is obligated to him for one-half of the SHR Loan that was due and owing on December 31, 2014, in the amount of $50,434.14, plus all contributions for interest and principal made to date by him on Ms. Read's behalf, for a total debt of $58,755.78; and (3) Ms. Read is also indebted to him for one-half of all interest that Mr. Ruddick is required to pay

during the remainder of the SHR Loan term. Attached to the Amended Complaint are copies of, among other documents, (1) the promissory note dated July 27, 2010, (the "Note") signed by both parties, in which the parties "jointly and severally agree to pay . . . the principal, premium and interest due and payable hereon"; and (2) the PSA.

Mr. Ruddick argues that there is "no triable issue of fact as to whether the SHR Loan is a joint debt, which Defendant 'incurred in connection with a separation agreement.'" (Motion at 5). Thus, he asserts, he is entitled to judgment as a matter of law because the SHR Loan is nondischargeable under § 523(a)(15) and the "characterization of the debt or the reasoning behind the assignment of the debt is immaterial." (*Id.* at 7). The SHR Loan is a joint debt because the parties agreed that they would share that debt equally. (*Id.* at 5). Citing several bankruptcy cases, he contends that the SHR Loan is a debt owed to him, notwithstanding the absence of express "hold harmless" language in the PSA, because the division of marital debt owed to a third party in a property settlement agreement creates a debt to a former spouse for purposes of § 523(a)(15). (*Id.* at 5). Mr. Ruddick also argues that Rhode Island law does not require "hold harmless" or indemnification provisions to render parties to a PSA jointly and severally liable for shared debts. He contends that, "regardless of whether Defendant's obligation is to pay money directly to Plaintiff or [Mrs. Ruddick], Plaintiff is the intended beneficiary of that obligation and the obligation is fully enforceable by the Family Court." (*Id.* at 3).

Finally, he challenges as meritless Ms. Read's defense that the PSA is ambiguous and that, based upon the parties' property settlement negotiations, it is subject to judicial reformation. He argues that the agreement is not ambiguous, inequitable, or the product of mutual mistake. (Plaintiff's Supplemental Memo at 3).

3

B. <u>Ms. Read</u>

Ms. Read counters that summary judgment is not appropriate because Mr. Ruddick "has not met his burden of showing that there is no issue of material fact and that this set of facts leads to the conclusion that the debt in question is not dischargeable." (Objection at 6.1).[2] To the contrary, she argues, "there is a genuine issue of material fact as to whether the debt in question was incurred in the course of, or in connection with, the parties['] divorce . . . or whether it was an existing debt between the parties which was merely referenced and referred to in the PSA." (*Id.* at 5.1). Ms. Read maintains that the PSA did not change the terms of the SHR Loan in any way or even provide for indemnification of the debt. (*Id.* at 6.2). Therefore, the PSA did not create a new obligation because the "mere restatement of an existing obligation between the parties does not necessarily create new enforcement rights—and thus a new debt—that did not already exist." (*Id.* at 5.2). She also maintains that the SHR Loan "is a debt owed to Plaintiff's mother and not to her husband directly." (*Id.*). Therefore, the SHR Loan does not fall within the exception to discharge under § 523(a)(15) because it is not a new debt and is not owed to Mr. Ruddick directly.

As to disputed material facts, Ms. Read contends that the PSA is ambiguous, inequitable, and the product of mutual mistake. (Defendant's Supplemental Memo at 3). Ms. Read focuses on section 8 of the PSA, titled "Debt" (the "Bankruptcy Provision"), which reads: "The parties acknowledge that the Wife is currently exploring the possibility of bankruptcy in that she may file for bankruptcy in the near future." (PSA at 4). Due to the Bankruptcy Provision, she argues, the PSA "is ambiguous as to its terms with regard to the distribution of the marital debt and the fact that the parties anticipated that Defendant would file a bankruptcy." (Defendant's

---

[2] The Objection has two pages that are numbered "5" and two pages that are numbered "6." This Decision will refer to these pages as 5.1, 5.2, 6.1, and 6.2.

4

Supplemental Memo at 2). She asserts that the parties divided their debts on the assumption that she would file bankruptcy in order to discharge the SHR Loan; Ms. Read's only debt was the SHR Loan, a fact of which Mr. Ruddick was always aware. (*Id.* at 2-3). "[H]ad the parties intended for Defendant to remain responsible for the loan to Susan H. Ruddick . . . after the bankruptcy, Defendant would not have agreed to pay Plaintiff [$40,000 of her 401K]." (*Id.* at 2). She "was lead to believe that her filing the Chapter 7 Bankruptcy would discharge her debt to Susan H. Ruddick. Negotiations between attorneys for the parties included such assumptions." (*Id.* at 3). According to Ms. Read, this demonstrates that the PSA is "ambiguous, inequitable, and subject to change by the court based upon mutual mistake." (*Id.*).

## IV.    Discussion

### A.    Summary Judgment Standard

Under Fed. R. Civ. P. 56, made applicable by Fed. R. Bankr. P. 7056, summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There is a genuine issue of fact where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Chadwick v. WellPoint, Inc.*, 561 F.3d 38, 43 (1st Cir. 2009). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

### B.    Does Ms. Read Owe Mr. Ruddick a Debt Within the § 523(a)(15) Exception to Discharge?

Mr. Ruddick is entitled to summary judgment only if the SHR Loan falls squarely within § 523(a)(15), which states:

5

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-- to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit.

In this case, the parties do not dispute that the SHR Loan is "not of the kind described in paragraph (5)." The only issues are whether Ms. Read owes a debt to Mr. Ruddick and, if so, whether that debt was incurred in the course of the parties' divorce or in connection with the PSA.

In 2005, BAPCPA amended § 523(a)(15) significantly. It deleted prior subparts (A) and (B), which had "shifted the burden to the debtor to prove either that the debtor did not have the ability to pay the debt or that a balancing of relative hardships . . . weighed in favor of the debtor receiving the discharge." Hon. William Houston Brown, *Taking Exception to a Debtor's Discharge: The 2005 Bankruptcy Amendments Make It Easier*, 79 Am. Bankr. L.J. 419, 439 (2005). Following these amendments, "the reach of subsection (15) [is] to all domestic obligations that are not support in nature . . . . Essentially, the combination of section 523(a)(5) and 523(a)(15) excludes from discharge all marital and domestic relations obligations, whether support in nature, property division, or hold-harmless." Hon. William Houston Brown, *Bankruptcy and Domestic Relations Manual* § 1:3 (2006). BAPCPA also added the requirement that debts excepted from discharge under § 523(a)(15) must be "to a spouse, former spouse, or child of the debtor." "This was assumed based on legislative history to the former statute, but the revised section now spells it out." James L. Musselman, *Once Upon a Time in Bankruptcy Court: Sorting Out Liability of Marital Property for Marital Debt Is No Fairytale*, 41 Fam. L.Q. 249, 267 (2007). To qualify for the exception to discharge under § 523(a)(15), the debt in dispute here

must be owed to Mr. Ruddick and must have been incurred in connection with the PSA or in the course of the parties' divorce.

> . . . courts were divided on the matter of whether debts delegated to divorcing/separating spouses in separation agreements or divorce decrees without express hold harmless or indemnification provisions were excepted from discharge under § 523(a)(15). Some courts held that an express hold harmless clause must be present to create direct liability from the debtor to the former spouse. Other courts held that separation agreements created an obligation on the part of the debtor to the non-debtor spouse even in the absence of an express indemnity or hold harmless clause.

*Wodark v. Wodark (In re Wodark)*, 425 B.R. 834, 837 (B.A.P. 10th Cir. 2010). This split of authority continues to persist. *See Sherman v. Proyect (In re Proyect)*, 503 B.R. 765, 773-74 (Bankr. N.D. Ga. 2013) (comparing cases from both before and after the passage of BAPCPA); *Johnson v. Johnson (In re Johnson)*, 2007 Bankr. LEXIS 3645, *11 (Bankr. N.D. Ohio Oct. 23, 2007) "(Courts are divided on the issue of whether debts owing to third parties and not subject to indemnification or hold harmless language fall within the ambit of § 523(a)(15).").

Because "[t]here is no requirement in § 523(a)(15) that a debt obligation incurred as part of a dissolution judgment be payable directly to the ex-spouse in order to be excepted from a debtor's discharge", (*Francis v. Wallace (In re Francis)*, 505 B.R. 914, 919-20 (B.A.P. 9th Cir. 2014)), courts that require such language may "nevertheless conclude that § 523(a)(15) applies, focusing on the new state-law rights of an ex-spouse to enforce the terms of a divorce decree, including an obligation for the other to pay a third party." *In re Proyect*, 503 B.R. at 774; *see also Dunne v. Lind (In re Dunne)*, 2010 U.S. Dist. LEXIS 35693, *6 (W.D. Mich. Apr. 12, 2010) (citing *Gibson v. Gibson*, 219 B.R. 195, 202-03 (B.A.P. 6th Cir. 1998)) ("Although a debt is frequently 'incurred' by a debtor-spouse's obligation to pay a third-party debt directly to a

spouse or to hold a spouse 'harmless,' a debtor may also, and frequently does, incur such an obligation to a spouse in accordance with applicable nonbankruptcy law.").

When reviewing debts under § 523(a)(15), what matters is "(1) the nature of the debt; and (2) whether the debt was incurred in the course of a divorce or separation. The fact that the underlying obligation was payable to [a third party] does not mean that [the debtor ex-spouse] did not incur a separate obligation to [the non-debtor ex-spouse] that is, in itself, a nondischargeable debt." *In re Wodark*, 425 B.R. at 837-38. Here, the Promissory Note states: "Makers jointly and severally agree to pay, in addition to the principal, premium, and interest due and payable hereon, all costs of collection or attempting to collect this Note . . . ." Even though the parties' liability on the SHR Note already was joint and several, by agreeing in the PSA to each pay one-half of this debt, Mr. Ruddick and Ms. Read incurred obligations to each other that did not exist prior to the PSA. By virtue of the PSA, the parties incurred new obligations to each other by agreeing that they would be entitled to enforce the provisions of the PSA against one another in the Family Court (even if their obligations under the SHR Loan were unchanged).

A review of the case law in Rhode Island reveals at least one case in which a similar apportionment of debt obligations undertaken by the parties to a separation agreement that did not contain hold harmless language was held to be enforceable against the defaulting party. In *Hemingway v. Hemingway*, the Rhode Island Superior Court ordered an ex-husband to reimburse his ex-wife for half of the tuition expenses she had incurred on behalf of their children based upon a PSA clause that provided: "The parties agree to divide equally any secondary school or college bills that the children incur." The court reasoned that the ex-husband "was, and is, obligated to pay half the bills his children have incurred." *Hemingway v. Hemingway*, 1995 R.I. Super. LEXIS 68, 9-10 (R.I. Super. Ct., Apr. 13, 1995). In essence, the *Hemingway* court read hold

8

harmless language into the property settlement agreement at issue by virtue of the apportionment agreement of the parties.

In short, the fact that the SHR Loan obligation is owed by the parties jointly and severally to a third party does not eliminate Ms. Read's obligation to Mr. Ruddick. The PSA created a right and obligation between the parties giving rise to contract rights against one another enforceable in the Family Court. Clearly, Mr. Ruddick holds a claim against Ms. Read as defined by Code § 101(5). *See In re Brown*, 2012 Bankr. LEXIS 18, 7-8 (Bankr. D. Mass. 2012) (parties' separation agreement "resulted in a new legally enforceable obligation pursuant to which the Debtor assumed responsibility for their joint debt to Bank of America" and enforcement of that obligation was a "claim" within the broad definition under § 101(5)).

I recognize the above-described split in the case law as to whether a property settlement agreement must contain a hold harmless clause in order for one spouse to owe a debt to the other spouse under the circumstances we have here, and I am persuaded, as was the *Hemingway* court, that hold harmless language is not necessary for a PSA to create new, enforceable rights against former spouses. *See also In re Wodark*, 425 B.R. at 837-38; *In re Dunne*, 2010 U.S. Dist. LEXIS 35693, *6. Hence, absent the defenses Ms. Read asserts – and she alleges facts and presents at least some evidence in support of those defenses – I would find that Ms. Read owes Mr. Ruddick a debt that is nondischargeable under § 523(a)(15).

C. <u>Ms. Read's Defenses to the PSA</u>

In addition to her challenge to the applicability of § 523(a)(15), Ms. Read denies the validity of Mr. Ruddick's claim under the PSA. She maintains that the PSA is ambiguous about the purpose of the bankruptcy reference, that there was a mutual mistake in the drafting of the

9

PSA, and that Mr. Ruddick is acting with unclean hands that preclude him from enforcing the PSA.

The parties agree that because the PSA was not merged into the final divorce decree, it "retains the characteristics of a contract," and generally "the modification of contracts can only be accomplished by the contracting parties." *Riffenburg v. Riffenburg*, 585 A.2d 627, 630 (R.I. 1991). And they both agree that a contract may be subject to judicial reformation if a court finds grounds for reformation, such as ambiguity or mutual mistake. *See Gorman v. Gorman*, 883 A.2d 732, 740 (R.I. 2005) ("For a contract to be subject to judicial reformation, the court must find a mutual mistake."); *Paul v. Paul*, 986 A.2d 989, 995 (R.I. 2010) ("Therefore, a property settlement agreement . . . that has been incorporated by reference in, but not merged with, a divorce judgment can be modified only if the parties consent or if a ground for reformation under contract law, such as ambiguity, exists.").

Mr. Ruddick may not be entitled to summary judgment if the PSA is ambiguous and potentially subject to judicial reformation. Ambiguity in contract is a question of law. *Paul v. Paul*, 986 A.2d 989, 993 (R.I. 2010). "An ambiguity occurs only when the contract term is reasonably and clearly susceptible of more than one interpretation." *Rivera v. Gagnon*, 847 A.2d 280, 284 (R.I. 2004) (internal quotation omitted). In reviewing a contract for ambiguity, "it is well established that a document must be viewed in its entirety, and the contract terms must be assigned their plain and ordinary meanings. . . . [A] determination of ambiguity . . . is confined to the four corners of the agreements." *Id.* If the contract is clear and unambiguous, "judicial construction is at an end for the terms will be applied as written." *W.P. Assocs. v. Forcier, Inc.*, 637 A.2d 353, 356 (R.I. 1994). "It is a basic tenet of contract law that the contracting parties can make as 'good a deal or as bad a deal' as they see fit.'" *Rivera v. Gagnon*, 847 A.2d 280, 285

(R.I. 2004) (quoting *Durfee v. Ocean State Steel, Inc.*, 636 A.2d 698, 703 (R.I. 1994)). Rhode Island courts will leave the plain meaning of the bargain undisturbed.

Here, Mrs. Read argues the PSA is ambiguous because the inclusion of the Bankruptcy Provision is reasonably and clearly susceptible of more than one interpretation. One possible interpretation is that the parties intended the Bankruptcy Provision to mean that Ms. Read, if she filed a bankruptcy petition, would discharge all of her obligations under the SHR Loan, both to Mrs. Ruddick and to Mr. Ruddick; in other words, the parties agreed to share equally in liability for the SHR Loan but both understood that Ms. Read would discharge any such obligations in bankruptcy. A contrary interpretation is that the parties intended the Bankruptcy Provision to mean that while Ms. Read might file for bankruptcy protection, her liability for one half of the SHR Loan would remain intact (i.e. not be discharged) because of her agreement in the PSA to pay one-half of this debt, discharging only the debt owed directly to Mrs. Ruddick. The question then is: What did the parties mean and what is the purpose of that seemingly simple statement, "The parties acknowledge that the Wife is currently exploring the possibility of bankruptcy in that she may file for bankruptcy in the near future." Ms. Read asserts that this alleged ambiguity raises issues that preclude summary judgment in favor of Mr. Ruddick and requires judicial reformation of the PSA.

Closely related to this argument is her contention that a mutual mistake was made in that the parties' agreed intent of the Bankruptcy Provision was not clearly expressed in the language of the PSA. A mutual mistake occurs "[w]hen, at the time an agreement is entered into, . . . the agreement fails in a material respect correctly to reflect the understanding of both parties." *Hazard v. Hazard*, 45 A.3d 545, 550 (R.I. 2012) (internal quotation omitted). A mutual mistake is "such a mistake in the draughting of the writing, as makes it convey the intent or meaning of

neither party to the contract." *Diman v. Providence, Warren, and Bristol R.R. Co.*, 5 R.I. 130, 134-35 (1858). When a contract fails to reflect the terms of an agreement as understood by one, but not both, parties, there is unilateral, rather than mutual, mistake. *Rivera v. Gagnon*, 847 A.2d 280, 285 (R.I. 2004) (concluding that because the plaintiff "did not understand the contents of the [contract] to convey what the agreement[], to us, clearly and unambiguously convey. . . . [P]laintiff made a unilateral mistake by not memorializing the terms of the agreement as she understood them"). Contracts that are the product of mutual mistake are subject to reform by a court, but contracts that are the product of unilateral mistake are not. *See Vanderford v. Kettelle*, 64 A.2d 483, 488-89 (R.I. 1949) ("[T]he mistake which the court may correct in a written instrument 'must be, as it is usually expressed, the mistake of *both* parties to it . . . . A mistake by one party coupled with ignorance thereof by the other party does not constitute a mistake within this rule." (quoting *Diman*, 5 R.I. at 134-35)).

Ms. Read argues that whether the PSA was the product of mutual mistake is an issue of material fact concerning the parties' shared understanding in drafting the PSA. She contends that the Bankruptcy Provision "was deliberately placed in the PSA to evidence the Husband's complete and informed knowledge that Wife would file for bankruptcy. In fact, the settlement negotiations in the parties' divorce uncontrovertibly include Debtor's intentions to file bankruptcy and discharge this debt . . . and Plaintiff was fully aware of this . . . ." (Objection at 5.1). According to Ms. Read's divorce counsel, "[i]t was expressly understood at the time of the divorce that Ms. Read intended to discharge her portion of that debt to Susan Ruddick via bankruptcy." (Objection, Ex. A). She maintains that the "SHR loan was divided cleanly in two, each of us solely responsible for our half. Again, [Mr. Ruddick] was aware that I would seek a bankruptcy discharge for this debt and he never opposed this, nor made any representations that

12

he would." (Motion, Ex. C). If that was the parties' agreement, the parties did not (or at least did not clearly) memorialize those terms within the agreement, and Ms. Read alleges that was a mutual mistake that should be remedied by judicial reformation.

Finally, Ms. Read raises unclean hands as a defense to summary judgment. She alleges that Mr. Ruddick has no intention of repaying the SHR Loan and is only pursuing this action in order to "ruin her financially and bankrupt her and make her life miserable." (Objection at 6.1). According to her, Mr. Ruddick is "backdooring" the Bankruptcy Code by standing in the shoes of his mother (Mrs. Ruddick), who is precluded from challenging dischargeability under the Code. (*Id.*).

    D.  Abstention

I turn now to the crux of the abstention issue presented here given the nature of the parties' underlying dispute and the concurrent jurisdiction of the state courts to determine the nondischargeability of debts under § 523(a)(15). This Court, "in the interest of justice, or in the interest of comity with State courts or respect for State law," may abstain from hearing this adversary proceeding. *See* 28 U.S.C. § 1334(c)(1). This consideration is paramount in matters relating to divorce and property settlement agreements. *See Lewis v. Lewis (In re Lewis)*, 423 B.R. 742, 757 (Bankr. W.D. Mich. 2010) (abstaining as to issue of whether certain obligations "may be nondischargeable property settlement obligations, 'regular' debts, or void obligations under Michigan law"). Whether to abstain is "within the sound discretion of the bankruptcy judge," *Carver v. Carver*, 954 F.2d 1573, 1579 (11th Cir. 1992), and 28 U.S.C. § 1334(c)(1) "is tailored for situations where the bankruptcy court will necessarily become entangled with issues regarding alimony, child support or other family matters." *In re Thaggard*, 180 B.R. 659, 663 (M.D. Ala. 1995); *see also In re White*, 851 F.2d 170, 173 (6th Cir. 1988) ("It is appropriate for

13

bankruptcy courts to avoid invasions into family law matters out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters.").

I will abstain from hearing this adversary proceeding because, unlike this Court, the Family Court deals regularly with the interpretation, application and enforcement of property settlement agreements arising in divorce proceedings and has far more expertise to resolve the issues the parties raise in the Motion and Objection. After all, it is the Family Court that approved the PSA, and that court is in the best position to interpret and apply the PSA in the context of the parties' divorce and property settlement as a whole. The interests of comity, judicial economy and justice would be served by the Family Court adjudicating this conflict, as that is the very court to which Mr. Ruddick concedes he must return for enforcement of the debt obligation under the PSA even if this Court were to determine the dischargeability issue in his favor. *See* Plaintiff's Supplemental Memo at 4 ("This Court's granting of Plaintiff's Motion for Summary Judgment . . . will permit Plaintiff to return to Family Court and seek enforcement of" the PSA.)

This Court must give the Family Court due deference as the court best suited to make the determination of whether Ms. Read's defenses are sufficient under Rhode Island law to raise genuine, material factual issues to overcome summary judgment and entitle her to a trial on the merits. She received her Chapter 7 discharge in October 2014, and her bankruptcy case, a "no asset case," was closed in December 2014. There is little reason for this nondischarge proceeding to be heard by this Court when the Family Court has concurrent jurisdiction to determine the discharge issue and has greater expertise to interpret the PSA and determine the disputed issues raised. In the event Ms. Read prevails on her defenses to the validity of the PSA, that is the court

14

that can reform the agreement. Alternatively, should Mr. Ruddick prevail and the debt be nondischargeable under §523(a)(15), that is the court to enforce the PSA. As the *Lewis* court aptly concluded: "With very limited exceptions, the bankruptcy court is no longer in the divorce and domestic relations business." 423 B.R. at 758.

**V.     Conclusion**

Abstention is warranted here, and under 28 U.S.C. §1334(c)(1) I dismiss this adversary proceeding and leave the parties to return to the familiar halls of the Family Court to resolve their post-divorce conflict.

Date:   July 10, 2015                                       By the Court,

                                                            /s/ Diane Finkle
                                                            _____
                                                            Diane Finkle
                                                            U.S. Bankruptcy Judge